## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| Trainor Glass Company, | ) | Case No. 12 B 09458 |
|                   Debtor. | ) | |
| _____ | ) | |
| | ) | Judge Carol A. Doyle |
| Phillip Van Winkle, as Liquidating | ) | |
| Trustee for the Trainor Liquidating Trust, | ) | |
| | ) | |
|                   Plaintiff, | ) | |
|      v. | ) | Adversary No. 13 A 00389 |
| | ) | |
| 3Form, Inc., | ) | |
|                   Defendant. | ) | |

### **MEMORANDUM OPINION**

The trustee for the Trainor Liquidating Trust brought this adversary proceeding against 3Form, Inc. seeking to avoid certain transfers. Trainor Glass Co. was a subcontractor on many building projects around the country. 3Form was one of Trainor's subcontractors. Trainor paid 3Form for its work on a construction project for the State of Utah in the 90 days before Trainor filed for bankruptcy. The trustee seeks to avoid the transfers as preferential under 11 U.S.C. § 547. 3Form has moved for summary judgment, arguing that the trustee cannot prove an essential element of his claim - that the bankruptcy estate was diminished by the payment to 3Form. It also contends that it will prevail on its affirmative defense based on a contemporaneous exchange for new value. 3Form is correct that the trustee must prove that the

estate was diminished by the transfers to 3Form, and that 3Form provided new value for purposes of its defense based on a contemporaneous exchange for new value. There are questions of material fact regarding each issue, however, so summary judgment must be denied.

1. **Background**

Trainor was hired by Jacobsen Construction Co., a general contractor, to perform work on a project at Utah State University owned by the State of Utah. Trainor in turn hired 3Form as one of its subcontractors for the job. The Utah mechanics lien statute does not apply to projects commissioned by the state, so subcontractors like Trainor and 3Form cannot file mechanics liens against state-owned property. Instead, the general contractor is required to post a 100% payment bond to insure that subcontractors are paid in full. Utah Code Ann. § 63G-6a-1103. Fidelity & Deposit Co. of Maryland and Liberty Mutual Insurance Co. (collectively "Fidelity") provided the 100% payment bond for the Utah State project.

3Form completed its work for Trainor, and Trainor completed its work for Jacobsen. On February 2, 2012, Trainor sent 3Form two checks totaling $133,397.80 to pay it in full for its work on the project. On February 28, 2012, 3Form confirmed to Jacobsen that it had been paid in full and delivered a release and waiver of its rights against Jacobsen and Fidelity. Trainor filed for bankruptcy on March 9, 2012. Trainor and Jacobsen reached a settlement in June 2012 of the remaining amount due to Trainor under their contract. Phillip Van Winkle, the trustee of the Trainor Liquidating Trust, then filed this adversary proceeding seeking to avoid the payments Trainor made to 3Form as preferential transfers (Count I) and fraudulent transfers (Count II). He also seeks return of the avoided transfers under 11 U.S.C. § 550 (Count III) and to disallow any

claim filed by 3Form in the bankruptcy case under 11 U.S.C. § 502(d) (Count IV) based on the allegedly avoidable transfers.  3Form moves for summary judgment on all claims.

2.    **Constitutional Authority - Preference Claim**

Before turning to the merits of the motion for summary judgment, the court must address its constitutional authority to decide the claims in the complaint.  The court has subject matter jurisdiction to adjudicate all the claims in the complaint.  28 U.S.C. §§ 157, 1334.  3Form states in its motion, however, that both the fraudulent conveyance claim and the preference claim "may be so-called '*Stern* claims.'"  It therefore contends that this court does not have the constitutional authority to enter a final judgment on these claims, but instead must submit proposed findings of fact and conclusions of law to the district court.

In *Stern v. Marshall*, 564 U.S. __, 131 S.Ct. 2594 (2011), the Supreme Court held that a bankruptcy court does not have "the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."  *Id*. at 2620.  The Court also held that a bankruptcy court has the authority to enter final judgment when "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."  *Id*. at 2618.  3Form is correct that fraudulent transfer claims may be *Stern* claims; this is an open issue following the Supreme Court's decision in *Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165 (2014) ("we assume without deciding, that the fraudulent conveyance claims in this case are *Stern* claims.").  The trustee has agreed to dismiss the fraudulent transfer claim so the court need not resolve this issue.

A preference claim, however, is "a right of recovery created by federal bankruptcy law." *Stern*, 131 S.Ct. at 2618. In *Stern*, the Court held that the bankruptcy court's jurisdiction and authority to enter final orders is properly exercised in resolving claims *or* in causes of action that stem from the bankruptcy itself. The Court specifically referred to preference actions as "derived from" and "dependent on" bankruptcy law, suggesting that a bankruptcy court has the authority to enter a final judgment on the claim. *Stern*, 131 S.Ct. at 2618. Bankruptcy courts in this circuit have consistently concluded that they may enter a final judgment on a preference claim because the proceeding "stems from the bankruptcy itself." *See, e.g., Martino v. Miszkowicz (In re Miszkowicz)*, 513 B.R. 553, 556 (Bankr. N.D. Ill. 2014); *McDonald v. Little Limestone, Inc. (In re Powers Lake Construction Co., Inc.)*, 482 B.R. 803, 805 (Bankr. E.D. Wis. 2012); *KHI Liquidation Trust v. Wisenbaker Builder Services, Inc. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 895 (Bankr. N.D. Ill. 2012); *Reid v. Presbitero (In re First Choice Drywall, Inc.)*, 2012 WL 4471570, *3 (Bankr. N.D. Ill. 2012). The court may therefore enter a final judgment on the preference claim in Count I.

### 3. Summary Judgment

3Form moves for summary judgment on the preference claim. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491 (7th Cir. 2000). A genuine issue of material fact exists

when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party opposing summary judgment will defeat the motion when it presents "definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trustees of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002); *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000). Merely responding to a factual assertion that is supported by evidence with "disputed" is insufficient to rebut that assertion. Rule 7056-2(A)(2) of the Local Rules of Bankruptcy Procedure requires a response to each statement of fact "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon . . . ." *See also In re Bauman*, 461 B.R. 34, 41 (Bankr. N.D. Ill. 2011) (without evidentiary support for denials, asserted facts are admitted); *In re marchFirst, Inc.*, 2010 WL 4027723, at *2 (Bankr. N.D. Ill. Oct. 14, 2010) ("Facts denied without evidence to support the denial are admitted.").

3Form argues that it is entitled to summary judgment on the preference claim for two reasons. First, it contends that there was no diminution of Trainor's bankruptcy estate as a result of the payments it received because if Trainor had not paid 3Form, Jacobsen or Fidelity would have paid it and deducted the payment from any amounts that Jacobsen still owed to Trainor under their contract. Second, 3Form argues that its release of its rights against Jacobsen and Fidelity provided new value to Trainor, so it must prevail on its affirmative defense based on a contemporaneous exchange for new value under § 547(c)(1) of the Bankruptcy Code. The court

agrees that 3Form has shown that the transfers did not diminish Trainor's bankruptcy estate and that it provided new value to Trainor for purposes of § 547(c)(1), but only to the extent that there were unpaid amounts owed by Jacobson to Trainor when 3Form was paid in February 2012.

### A.    Preference Claim - Diminution of the Bankruptcy Estate

3Form argues that the trustee cannot prove an essential element of a preference claim - that the transfer caused a diminution in the bankruptcy estate of the debtor.  Under § 547(b), a transfer of an interest of the debtor in property is preferential, and therefore avoidable, if it: (1) was made to or for the benefit of a creditor, (2) was for or on account of an antecedent debt, (3) was made while the debtor was insolvent, (4) was made on or within 90 days before the date of the filing of the petition, and (5) allowed the creditor to receive more than it otherwise would have.  *Warsco v. Preferred Tech. Group,* 258 F.3d 557, 564 (7th Cir. 2001); *In re Lewinski*, 410 B.R. 828, 831-32 (Bankr. N.D. Ind. 2008); 11 U.S.C. § 547(b).   The Seventh Circuit requires a plaintiff to establish one more element for its prima facie case - that the transfer resulted in a diminution of the bankruptcy estate of the debtor.  *See Warsco,* 258 F.3d at 564 ("Courts considering this element of the preference provision have focused on whether the transfer diminished the debtor's estate."); *In re Smith*, 966 F.2d 1527, 1535-36  (7th Cir. 1992) ("But courts have also long held that to be avoidable, transfers must result in a depletion or diminution of the debtor's *estate*.").

3Form contends that Trainor's bankruptcy estate was not diminished by the payment to 3Form because if Trainor had not paid it, Jacobsen or Fidelity would have paid 3Form and exercised the right to any unpaid amounts owed by Jacobsen to Trainor.  Thus, 3Form contends that the transfers had no impact on the bankruptcy estate because if Trainor had not paid 3Form,

-6-

one of two things would have happened: (1) Jacobson would have paid 3Form directly and deducted the payment from the balance still owed to Trainor under its contract with Jacobsen, or (2) Fidelity would have paid 3Form and asserted its equitable lien on any amounts that remained unpaid under the contract between Jacobson and Trainor. Either way, argues 3Form, the Trainor estate would have the same amount of money available for distribution to unsecured creditors that it has now.

### 1. Diminution Requirement Applies

The trustee seems to argue that the diminution requirement applies only in cases in which there is a question regarding whether the money transferred to the preference defendant was property of the debtor.[1] He contends that this was the issue in both of the Seventh Circuit decisions relied upon by 3Form - *Smith* and *Warsco*. He asserts that there is no doubt that the money transferred to 3Form was Trainor's money so the diminution requirement does not apply. While the trustee is correct that the issue in both *Smith* and *Warsco* was whether the transfers were of property of the debtor or a third party, the diminution requirement is not limited to cases raising that issue. Instead, as noted in *Deel Rent-A-Car, Inc. v. Levine*, 721 F.2d 750, 755-56 (11th Cir. 1983), the diminution element evolved in pre-Code cases that did not involve disputes over whether the debtor owned the assets transferred. "[T]he courts have applied the doctrine in cases in which one creditor receives an asset that, for some reason, is protected from the claims of other creditors." 721 F.2d at 756, (citing *Continental and Commercial Trust and Savings Bank v. Chicago Title and Trust,* 299 U.S. 435, 33 S.Ct. 829 (1913) (creditors of estate having

---

[1]Most of the trustee's arguments regarding the cases cited by 3Form are in footnotes which discuss specific cases but do not make a cohesive argument.

no claim on margin certificates); *Azar v. Morgan*, 301 F.2d 78 (5th Cir. 1962) (payment to a secured creditor not diminishing the assets available to general creditors)). *See also Buckley v. Jeld-Wen, Inc. (In re Interior Wood Products Co.)*, 986 F.2d 228, 230-31 (8th Cir. 1993) (plaintiff must prove diminution of the bankruptcy estate); *Abramson v. St. Regis Paper Co.*, 715 F.2d 934, 938 (5th Cir. 1983) (trustee must establish diminution in case under § 60(b) of the Bankruptcy Act, the precursor to § 547 of the Bankruptcy Code); *Schwinn Plan Comm. v. Transamerica Ins. Fin. Corp. (In re Schwinn Bicycle Co.*), 200 B.R. 980, 994 (Bankr. N.D. Ill. 1996) (discussing origin of diminution requirement).  As the Fifth Circuit has explained,

> The purpose of the law of preferences is to secure an equal distribution of the bankrupt's assets among his creditors of like class.  If a transaction, in its entirety, does not interfere with this purpose of the law, it does not constitute a voidable preference.  The fact that one creditor is paid in full from a source to which other creditors have no right to resort, does not entitle other creditors to complain or the trustee to recover the amount so secured.

*Walker v. Wilkinson*, 296 F. 850, 852 (5th Cir. 1924).

Thus, the diminution requirement is not limited to cases in which the dispute centers on whether the property transferred belonged to the debtor.  Instead, it applies to all preference actions.  The trustee must therefore establish that the payments to 3Form caused a diminution of Trainor's bankruptcy estate.

### 2. 3Form's Evidence

3Form argues that the trustee cannot prove that Trainor's estate was diminished by the payments to 3Form because if Trainor had not paid 3Form, either Jacobsen or Fidelity would have paid it and deducted the payment from the remaining amount owed to Trainor for the project.  It submits the affidavit of one of its employees (Catherine Ferguson) and a Vice

President of Jacobsen (Matt Radke), both of whom state that if Trainor had not paid 3Form, Jacobsen or Fidelity would have paid it and then deducted the amount paid from the amount still owed to Trainor under the Master Subcontract with Jacobsen. 3Form Stmt. of Facts, Par. 20-22; Ferguson Aff., Par. 7-11; Radke Aff., Par. 15-17. 3Form also asserts that Jacobsen did in fact withhold payment to Trainor when Trainor failed to pay other subcontractors. Jacobsen paid those subcontractors directly and deducted the amount paid from the remaining amount due to Trainor under the Master Subcontract. 3Form Stmt of Facts, Par. 30; Radke Supp. Aff. Par. 12. In his response to Paragraphs 20-22 of 3Form's Statement of Facts, the trustee states only "Disputed." In response to Paragraph 30, he states that he has no knowledge of the assertions and therefore disputes them. The trustee fails to argue that the Ferguson or Radke testimony is inadmissible under the Federal Rules of Evidence, or to provide any evidence to contradict their affidavits. He has thus failed to controvert these factual contentions, so they are admitted. Fed. R. Civ. P. 56(c)(1). *In re marchFirst, Inc.*, 2010 WL 4027723, at *2 (Bankr. N.D. Ill. Oct. 14, 2010) ("Facts denied without evidence to support the denial are admitted.").

3Form also states in Paragraph 23 of its Statement of Facts that the Master Subcontract allows Jacobsen to withhold contract proceeds from Trainor if it fails to pay its own subcontractors, and that Jacobsen can offset the amounts that Trainor owes to its subcontractors against sums otherwise due to Trainor. The trustee again responds that this statement is "disputed," with an additional statement that does not negate 3Form's assertions. 3Form has accurately described Jacobsen's rights under Paragraphs 4.C and 4.D of the Master Subcontract. 3Form Stmt. of Facts, Ex. A to Supp. Aff. of Matt Radke.

Thus, there is no genuine issue of fact that if Trainor had not paid 3Form, Jacobsen would have paid it and deducted the amount paid from any remaining amount due to Trainor under the Master Subcontract. If for any reason Jacobsen had been unable to pay 3Form, Fidelity would have paid 3Form, asserted its equitable lien on balances due from Jacobsen to Trainor, and been reimbursed by Jacobsen from any amounts still owed to Trainor. It is also undisputed that Jacobsen required 3Form to sign a waiver and release form, which stated that 3Form had been paid in full for its work, that 3Form waived any further right to payment on the project, and that it had either already paid its workers, subcontractors and suppliers or would do so promptly after being paid. 3Form Stmt. of Facts, Par. 26-28, Radke Aff. Par 12-13, Ex. C. These undisputed facts establish that there was no diminution of the bankruptcy estate resulting from Trainor's payment to 3Form to the extent that Jacobson could have withheld amounts still due to Trainor under the Master Subcontract.

### 3.     Amount Owed by Jacobsen to Trainor

The court is unable to determine, however, exactly how much was owed by Jacobsen to Trainor under the Master Subcontract when Trainor paid 3Form. On February 2, 2012, Trainor sent 3Form two checks totaling $133,397.80, which apparently cleared the bank on February 6-7, 2012. The trustee asserts that the remaining amount owed by Jacobsen to Trainor "shortly after the filing of the bankruptcy" was $34,581. The trustee submits his own affidavit to support this contention. In it, however, he states only that, "As of the date of the Preferential Transfer, Jacobsen still owed the Debtor $34,581." Van Winkle Aff., Par. 8. The trustee had no involvement with Trainor during the relevant time frame and he does not provide any basis for his statement. According to the affidavit of Edward Trainor, Trainor entered into a settlement

-10-

agreement with Jacobsen in June 2012 under which Jacobsen paid Trainor $34,581. Trainor Aff., Par. 7. Documents attached to the Trainor affidavit suggest that, as of May 30, 2012, Jacobsen owed Trainor $88,886, and that the $34,581 settlement amount reflected deductions from the amount owed to Trainor to cover post-petition payments Jacobsen made directly to some of Trainor's other subcontractors. *See* 3Form Stmt. of Facts, Par. 30, Radke Supp. Aff., Par. 12. As noted above, however, the relevant time frame for this analysis is the time of the transfers to 3Form. There is no evidence establishing the amount owed by Jacobsen to Trainor on February 6-7, 2012, when the Trainor checks cleared. The court therefore cannot determine the extent to which Jacobsen would have been able to withhold payment to Trainor, and thus the extent to which the trustee cannot prove a diminution of the bankruptcy estate resulting from the transfers. Trial will be necessary to determine the amount owed by Jacobsen to Trainor under the Master Subcontract on February 6-7, 2012.

### 4. Trustee's Other Arguments

In reaching these conclusions, the court rejects several arguments made by the trustee. He contends that First Midwest Bank, the first priority secured lender of Trainor, would have had priority over Fidelity on any amounts owed by Jacobsen to Trainor. This is not correct. First, if Jacobsen paid 3Form directly, First Midwest's lien would be irrelevant. Jacobsen had the right under the Master Subcontract to offset any amounts it paid directly to Trainor's subcontractors from any amounts it owed to Trainor. Since Trainor would have no right to any amount paid directly by Jacobsen to 3Form, First Midwest would have no lien rights to assert either. Second, if Fidelity had paid 3Form, it would have had priority over First Midwest against any amounts owed by Jacobsen to Trainor. The Utah Supreme Court has expressly held

that the equitable lien of a surety on any unpaid contract proceeds trumps the lien of any party contracting with subcontractor, including a secured lender or other assignee. *See Salt Lake City v. O'Connor*, 249 P. 810, 816-17 (Utah 1926); *see also Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 83 S.Ct. 232 (1962); *Prairie State Nat. Bank of Chicago v. United States*, 164 U.S. 227, 239-240, 17 S.Ct. 142, 147 (1896).

The trustee next argues that Fidelity's subrogation rights are limited to the rights that 3Form would have had against Trainor's bankruptcy estate. This is also incorrect. Sureties are not limited merely to standing in the shoes of the subcontractor they paid. The Utah Supreme Court has specifically held that a surety's right is paramount to any party who has contracted with the subcontractor (including secured lenders), and that it extends to the unpaid contract proceeds owed to the subcontractor who failed to pay its own subcontractors. *Salt Lake City v. O'Connor*, 249 P. at 815, 816-17.

Finally, the trustee contends that if Jacobsen had refused to pay Trainor, it could have collected from Fidelity on the bonds. This argument is frivolous. Jacobsen would have refused to pay Trainor only if Trainor failed to pay its own subcontractors and Jacobson paid them directly. Jacobsen would then be entitled under the Master Subcontract to deduct the amount it paid directly to subcontractors from any money it owed to Trainor. Trainor would have no valid claim for payment from Jacobsen under the Master Subcontract, so it would have no valid claim for payment from Fidelity.

In sum, while the court agrees with 3Form that the trustee will not be able to prove a diminution in the bankruptcy estate resulting from the payments to 3Form to the extent that

Jacobsen owed money to Trainor at the time 3Form was paid, there is a genuine issue of fact requiring a trial regarding the amount owed to Trainor at that time.

### B.      Contemporaneous Exchange for New Value Defense

3Form also argues that it is entitled to summary judgment on the preference claim based on its "contemporaneous exchange for new value" defense. Under 11 U.S.C. § 547(c)(1), a transfer may not be avoided to the extent that the transfer was:

> (A) intended by the debtor and the creditor . . . to be a contemporaneous exchange for new value given to the debtor; and
> (B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1). 3Form contends that by waiving its right to collect directly from Jacobsen and to be paid 100% of its claim by Fidelity, it provided new value for purposes of § 547(c)(1). The court agrees that 3Form provided new value to Trainor, but factual issues exist with respect to this defense.

Many courts have held that new value is provided when a third party releases lien rights in connection with the transfer that benefit the debtor. For example, in *O'Rourke v. Seaboard Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955 (9th Cir. 1989), the debtor was a general contractor on a project for the U.S. Department of Transportation governed by the Miller Act, 40 U.S.C. § 170a-270d, which is similar to the Utah statute that applies to the Utah State project. The general contractor paid two subcontractors before going into bankruptcy. The trustee of the general contractor sought to recover the payments as preferences. The Ninth Circuit concluded that the contemporaneous exchange for new value defense applied. The court cited *Pearlman v. Reliance Insurance*, 83 S.Ct. 232, in holding that if a surety pays subcontractors and materialmen, it has a subrogated right to contract balances. The court explained that if the debtor

had not paid the subcontractors, then the surety would have paid them and asserted its equitable lien against the balance due to the debtor under the contract. It found significant that the value of the debtor's estate is not diminished in these circumstances. The court stated that it agreed with the Fifth and Tenth Circuits, which had previously held that the release of a lien by a third party can constitute new value for purposes of § 547(c)(1). *887 F.2d at 959 (*citing *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.)*, 837 F.2d 224, 228 (5th Cir. 1988) (release of a letter of credit in exchange for the debtor's performance of its obligation is new value); *Kenan v. Fort Worth Pipe Co. (In re George Rodman)*, 792 F.2d 125, 127 (10th Cir. 1986) (release of a lien on an oil well in exchange for debtor's payment is new value)). It held that the release of the surety's equitable lien resulting from the debtor's payment to the subcontractor provided new value for purposes of § 547(c)(1). Later, in *Janas v. Reuter Equipment Co., (In re JWJ Contracting Co, Inc.)*, 74 Fed Appx. 779, 2003 WL 22097812 (9th Cir. 2003), the Ninth Circuit again held that a debtor who paid a subcontractor received new value when a surety would otherwise have paid the subcontractor and asserted an equitable lien against contract proceeds payable to the debtor.

The Eighth Circuit has similarly held that new value need not be given directly by the creditor to the debtor but can be given instead by a third party in connection with the transaction. *Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Area Pension Funds*, 130 F.3d 323, 327-328 (8th Cir. 1997). The *Jones Truck Lines* court criticized the few courts holding that the new value must be provided directly by the creditor to the debtor, stating that such a construction "radically alters" the plain meaning of the statute by inserting the word "directly" that Congress omitted. 130 F.3d at 327. The court noted that "[t]here are countless transactions

-14-

in which a debtor transfers property to a creditor in exchange for contemporaneous new value provided 'to the debtor' by a third party." *Id.* The court concluded that "we agree with the other circuits that have concluded that a transfer of new value by a third party to the debtor may satisfy the "new value" requirement of § 547(c)(1)(A)." 130 F.3d at 327-28, *citing In re Kumar Bavishi & Assocs.*, 906 F.2d 942, 945 (3rd Cir. 1990); *In re E.R. Fegert*, 887 F.2d at 959; *In re Fuel Oil Supply & Terminaling, Inc.*, 837 F.2d at 228-30.

      The trustee argues that the court should not recognize new value unless it is provided directly from the preference defendant to the debtor. He cites primarily *In re Bowers-Siemon Chemicals, Co.*, 139 B.R. 436, 448-49 (Bankr. N.D. Ill. 1992), which the *Jones Truck Lines* court expressly criticized for effectively adding the word "directly" to the language of 547(c)(1). He also cites a handful of other cases in asserting that the "majority" of courts have refused to recognize new value when a release or other value is provided indirectly via a third party. He fails to acknowledge, however, the four courts of appeals who have rejected his position. While there are decisions on both sides of this issue, the majority appears to follow the *Jones Truck Lines* analysis. *See* 4 NORTON BANKRUPTCY LAW AND PRACTICE § 66.35, at 66-163 (Hon. Wm. L. Norton, Jr. and Wm. L. Norton III, eds., 3d ed. 2014) (majority of courts agree with *Jones Truck Lines* analysis). Courts adopting this view recognize the economic reality of complex, multiparty relationships like those involved in construction projects owned by a governmental entity. While the Seventh Circuit has not directly addressed this issue, it has repeatedly focused on the economic realities of a transaction. *See, e.g., In re Smith*, 966 F.2d at 1532 (resolving difficult issue by examining "economic reality" of the transaction). The court finds the analysis in *Jones Truck Lines*, *Fegert*, and the many other cases with similar holdings

persuasive. The statutory language does not require that the new value be provided directly by the preference defendant to the debtor, and to so hold would ignore the economic reality of the transactions in this and many other cases when the transfers in question have no net negative effect on the bankruptcy estate.

The trustee also cites *Steinberg v. Socap International, Ltd., (In re Energy Cooperative Inc.)*, 832 F.2d 997 (7th Cir. 1987), in a footnote without making any specific argument about its significance in this case. *ECI* did not address whether new value could be provided indirectly through a third party to the debtor. In *ECI*, the court held that when the debtor paid a party in settlement of a claim for breach of contract, the release of the debtor's obligations under the contract did not provide new value for purposes of § 547(c)(1). The court noted that if a release in connection with a settlement were enough to constitute new value, every creditor would rush to enter into such a settlement and release at the first sign of financial trouble. It also noted that the release did not "free up any assets for other creditors," concluding in effect that the release provided no real additional value to the bankruptcy estate. 832 F.2d at 1003. In this case, by contrast, Trainor's payment to 3Form permitted Trainor to receive money due from Jacobsen under the Master Subcontract and released Fidelity's equitable lien on the money owed to Trainor. Thus, the payment to 3Form provided a value to the debtor beyond the mere release of Trainor's contractual obligation to pay 3Form - it enabled Trainor to receive money owed to it by Jacobsen that would otherwise have been withheld.[2]

---

[2]The court in *ECI* also focused on the definition of "new value" in 11 U.S.C. § 547(a)(2). In this case, the money released to Trainor as a result of its payment of 3Form falls squarely within that definition.

-16-

In the context of construction projects involving sureties, courts look at the unpaid balance due under the contract at the time of the transfer to determine the extent of new value provided. *See, e.g., Janas v. Reuter Equip. Co.*, 74 Fed. Appx. at 784; *Stahl v. Whelan Electric, Inc., (In re Modtech Holdings, Inc.*, 503 B.R. 737 (Bankr. C.D. Cal. 2013). As discussed above with respect to the diminution requirement, however, the court cannot determine the amount owed by Jacobsen to Trainor when the transfers were made in February 2012 from the documents submitted with the summary judgment motion. The court therefore cannot resolve this key element of 3Form's contemporaneous exchange for new value defense on summary judgment.[3]

**4.    Partial Findings**

Rule 56(g) of the Federal Rules of Civil Procedure provides that if a court does not grant all the relief requested in a motion for summary judgment, it may enter an order stating any material fact that is not genuinely disputed and treat the fact as established in the case. The trustee has failed to demonstrate that there is a genuine issue of fact regarding the facts alleged in the following paragraphs of 3Form's Statement of Material Facts:   1, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36.   The facts alleged in these paragraphs are established in this case.

---

[3] The court is also unable to determine on summary judgment whether the exchange of new value was contemporaneous as required under § 547(c)(1) and (2).  3Form failed to include any contentions regarding this issue in its Statement of Facts and it made no argument about it in its initial brief.  It addressed the issue for the first time in its reply without referring to evidence.  This issue must be resolved at trial.

5.   **CONCLUSION**

For the reasons stated above, 3Form's motion for summary judgment is denied. The court makes the partial findings pursuant to Rule 56(g) of the Federal Rules of Civil Procedure set forth in Section III above.

Dated:  January 14, 2015

.

ENTERED:

_____
Carol A. Doyle
United States Bankruptcy Judge